United States District Court
Southern District of Texas
**ENTERED**
March 31, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PACIFIC SUMMIT ENERGY LLC, | § § | CIVIL ACTION NO 4:24-cv-00648 |
| Plaintiff, | § § § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § § | |
| WP&G HOLDINGS, LLC, *et al*, | § § | |
| Defendants. | § | |

OPINION AND ORDER
DENYING MOTION TO DISMISS

The motion by Defendant Javed Meghani to dismiss this action is denied. Dkt 30; see also Dkt 32 (as sealed).

1. Background

Plaintiff Pacific Summit Energy, LLC, is a "multi-faceted energy marketing and trading company" that "provides retail energy supply and credit support services." Dkt 25 at 1.

Defendant WP&G Holdings, LLC, was previously known as Mega Energy Holdings, LLC, and will be referred to as *WP&G*. It is a now-defunct energy retail company that sold electricity to homeowners and small commercial customers. Ibid; see also Dkt 30 at 8–9. Defendant Mega Energy of New England, LLC, was one of its affiliate companies, and will be referred to as *Mega New England*. Dkt 25 at ¶¶10, 15. Javed Meghani served as the managing member, Chairman and CEO of WP&G. Id at ¶11.

The allegations of the first amended complaint are taken as true for purposes of the subject motion. As pleaded there, this case involves a letter of credit that PSE

extended to WP&G and Mega Energy New England in January 2024, along with a course of fraudulent conduct personally undertaken by Meghani in that regard for his own benefit, in utter disregard of the corporate form. Id at ¶10.

PSE and WP&G had previously entered into an integrated credit and wholesale energy agreement in 2014. Id at ¶8. That agreement was amended in September of 2019. Id at ¶9. This agreement obligated PSE to provide WP&G and its affiliates a letter of credit. Id at ¶10.

PSE alleges that its relationship with WP&G began to deteriorate prior to WP&G invoking the provision obligating the provision of the letter of credit at issue. Ibid. It further alleges that Meghani (as CEO) manipulated "WP&G's financial statements, forecasts and other business information" in 2021 and afterwards. Ibid. For example, PSE asserts that WP&G (per Meghani) used distorted accounting that inflated his company's assets, reduced its liabilities, and manipulated forecasts. Id at ¶¶11, 14. It also alleges that WP&G and Mega New England failed to disclose a violation of state regulations as required under their agreement. Id at ¶¶10, 12.

A series of delayed financial reports and disclosures in 2022 led PSE to begin seeking termination of its relationship with WP&G. Id at ¶15. But PSE was obligated to extend the subject letter of credit pursuant to the then-existing agreement. Ibid. And in any event, based on Defendants' representations, PSE still assessed WP&G and Mega New England to be financially sound and in compliance with their agreement such that it could extend the letter of credit at issue. Ibid. PSE thus provided the Massachusetts Department of Energy Resources the subject letter of credit on behalf of Mega New England in May 2022, with expiration in January 2024. Ibid.

The Massachusetts regulators then drew upon that letter in January 2024. Dkt 25 at ¶30. WP&G admits that it ran out of money in mid-2023, which left it unable to reimburse PSE. Id at ¶25; see Dkt 30 at 8. And PSE alleges that it wouldn't have extended that letter *but for* the

representations made by WP&G and Mega New England. Dkt 25 at ¶¶15, 19–20.

The relationship between PSE and WP&G had been set to expire in September 2022. Id at ¶16. PSE alleges that Meghani prior to that asked for a credit-support extension of three years as a bridge until he could find credit support elsewhere. Ibid. PSE says that Meghani represented that WP&G was in a strong financial condition and that it was about to reenter the ERCOT market in Texas, which it had left in 2020. Id at ¶¶16, 20. Relying on these representations, PSE in November 2022 entered into an extension with WP&G and its affiliates, including Mega New England, referred to as the *TriPartite Agreement*. Id at ¶¶16–18; see Dkt 30-1.

PSE alleges that WP&G also continued to provide delayed and misleading disclosures after entering the TriPartite Agreement. Dkt 25 at ¶¶17–24. And it believes such representations were also at the behest of Meghani. Id at ¶¶19–21. It further alleges that some of the disbursements that WP&G requested from its PSE-managed lockbox account for business purposes, were in fact drawn for "Meghani's own benefit." Id at ¶24. PSE also pleads that Meghani used those funds for personal expenses, salaries for himself and his family, and use by his other businesses. Ibid.

As already noted, the Massachusetts Department of Energy Resources drew upon the letter of credit in January 2024. See id at ¶30. This led PSE to send a demand letter to WP&G, Mega New England, and Meghani for reimbursement. Id at ¶¶30–31. The demand wasn't honored. Id at ¶31. Beyond that injury, PSE also claims that the misrepresentations by Defendants led it to default on other regulatory obligations, prevented it from mitigating other damages, and caused it to incur attorney fees and costs. Id at ¶¶16, 32.

PSE brought suit against WP&G, Mega New England, and Meghani in February 2024. Dkt 1. Its first amended complaint now asserts (i) damages for breach of contract against WP&G and Mega New England, id at ¶¶33–36; (ii)

damages for fraud by all three Defendants, id at ¶¶37–39; (iii) damages for negligent misrepresentation by all three Defendants, id at ¶¶40–42; (iv) declaratory relief that Meghani is the alter ego of WP&G and Mega New England and/or that veil-piercing is appropriate, id at ¶¶43–47; and (v) damages for violation of the Texas Uniform Fraudulent Transfer Act against all three Defendants, id at ¶¶48–52.

Pending is a motion brought solely by Meghani to dismiss the claims as against himself for failure to state a claim. Dkt 30.

2. Legal standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Read together, the Supreme Court holds that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 555.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

4

has acted unlawfully." Id at 678, quoting *Twombly*, 550 US at 557.

Review on motion to dismiss under Rule 12(b)(6) is constrained. The reviewing court must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (citation omitted). But courts don't accept as true what are simply conclusory allegations, unwarranted factual inferences, or legal conclusions. See *Gentiello v Rege*, 627 F3d 540, 544 (5th Cir 2010). The court must also generally limit itself to the contents of the pleadings and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014) (citation omitted).

### 3. Analysis

The motion by Meghani proceeds mainly upon invocation of the economic loss rule, arguing that PSE's alleged damages derive solely from its contract claim against the corporate defendants, thus barring its tort claims against Meghani. Dkt 30 at 13–18. He makes similar arguments with respect to the alter-ego and veil-piercing allegations. Id at 18–22. And he says that the TUFTA claim simply isn't viably pleaded. Id at 22–25.

What's left unclear is why such legal challenge is brought on behalf of only one of three jointly represented parties. WP&G and Mega New England thus concede by their silence that the claims for fraud, negligent misrepresentation, and violation of TUFTA *are* well-pleaded and *are not* subject to the economic loss rule. Given that discovery will necessarily proceed on all claims, there's no good reason to curtail inquiry as to one of three intertwined defendants. The motion to dismiss will thus be denied.

In any event, there's no inclination to allow Meghani to wipe his hands of the business details recounted in the amended complaint, even absent concession by his co-Defendants that all of the claims are viable. For one, he's not even a party to the contract by which Defendants would

5

seek to invoke the economic loss rule. Breach of contract is a distinct cause of action against only WP&G and Mega New England. Dkt 25 at ¶¶33–36.

What's more, the allegations as to Meghani include assertion that he himself, in both his corporate and personal capacities, undertook fraudulent and misleading conduct directed at PSE, both expressly and by failure to disclose. In particular, see id at ¶¶10, 13–17, 21.

Was that conduct directed solely towards the business of WP&G and Mega New England and the contractual relationship with PSE? No, or rather, at least not as alleged. Instead, the amended complaint makes it clear that (i) "Meghani used disbursements to WP&G from its lockbox account to have WP&G transfer funds to Meghani to pay expenses *not connected* with WP&G's ordinary business *but were instead for Meghani's own benefit*," (ii) he used those funds to pay for his "*other businesses*," along with "*personal expenses*, such as and not limited to expenses for his automobiles, meals, personal credit cards, advertising for Meghani's other businesses, and entertainment costs," and (iii) drew down WP&G equity to pay a salary not only to himself, but also to family members. Id at ¶24 (emphasis added).

And was that conduct directed by Meghani with legitimate protections of the corporate form? Again, no, not as alleged. Instead, the amended complaint notes that Meghani "dominates, controls, and directs the WP&G and Mega New England defendants," with specification why that is so, including that he (rather than "senior officers") maintained "actual authority" and that "all significant decisions and communications were determined by and directed by Meghani as principal." Id at ¶11. And it elsewhere alleges that he did all that while maintaining those companies as too thinly and inadequately capitalized to solvently undertake the business liabilities he was causing them to incur via his own independently tortious conduct. Id at ¶20.

Perhaps after discovery there will be an undisputed factual record on summary judgment regarding the

economic loss rule. But given the facts pleaded here, it seems unlikely that such defense will be available, as that rule is intended only to "preclude tort claims brought to recover economic losses when those losses are the subject matter of a contract." *Pugh v General Terrazzo Supplies, Inc*, 243 SW3d 84, 90 (Tex App—Houston [1st Dist] 2007, pet denied). It likewise seems unlikely that alter-ego and veil-piercing defenses will be available to him because the above—if and when proven true—sets out a course of fraudulent conduct by Meghani for his own personal benefit. See Texas Business Organizations Code §§21.223(b), 101.002(a). To the extent that the parties in this latter regard dispute applicability of the recent holding in *Keyes v Weller*, 692 SW3d 274 (Tex 2024), that will be sorted with jury instructions in light of the facts as developed at trial. See Dkts 43 & 44.

As such, no dispositive motion practice will be allowed absent permission sought and obtained at final pretrial conference. A revised scheduling and docket control order will enter separately to bring an expedited conclusion of this action. Extensions are unlikely to be granted.

### 4. Conclusion

The motion by Defendant Javed Meghani to dismiss the claims asserted against him for fraud, negligent misrepresentation, and violation of the Texas Uniform Fraudulent Transfer Act is DENIED. Dkts 30 & 32.

The amended scheduling order in this matter will be further revised by separate order. Dkt 51.

The parties are ADVISED that further filings in this action are unlikely to be permitted to be filed under seal.

Plaintiff is ORDERED to SHOW CAUSE why the first amended complaint should remain under seal. See Dkts 23 & 25.

Defendants are likewise ORDERED to SHOW CAUSE why the briefing and attachments on the subject motion to dismiss should remain under seal. See Dkts 30 & 32.

Such filings must be made by April 14, 2025.

SO ORDERED.

Signed on March 31, 2025, at Houston, Texas

*CREskridge*
Hon. Charles Eskridge
United States District Judge